**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ERIN WARE,<br><br>                   Plaintiff,<br><br>  v.<br><br>SMITH, *et al.*,<br><br>                  Defendants. | Case No. 3:20-CV-00102-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 30, 36] |

This case involves a civil rights action filed by Erin Ware ("Ware") against Defendant Robert Smith ("Smith"). Currently pending before the Court is Smith's motion for summary judgment. (ECF No. 30.) In response, Ware filed a cross-motion for summary judgment, (ECF No. 36), and Smith responded, (ECF No. 37). No replies were filed. For the reasons stated below, the Court recommends that Smith's motion for summary judgment, (ECF No. 30), be denied, and Ware's cross-motion for summary judgment be denied, (ECF No. 36).

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Ware is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). (ECF Nos. 8, 9.) On February 13, 2020, proceeding *pro se*, Ware filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, ("Complaint"), seeking, monetary damages. (ECF No. 7.) The Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 6.) In the Complaint, Ware named as defendants: (1) Correctional Officer Smith; (2) Correctional Officer Peterson; (3) the NDOC; (4) Baca; (5) the State of Nevada; (6) and Doe Defendant. (ECF Nos. 6, 7.) The Court dismissed, with

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

prejudice, defendants NDOC and the State of Nevada. (ECF No. 6.) The Court also dismissed, without prejudice, defendants Baca and John Doe. (*Id.*) The Court allowed Ware to proceed on one claim for an Eighth Amendment conditions of confinement claim, and the Court granted Ware leave to file an amended complaint. (*Id.*) Ware filed his first amended complaint ("FAC"), which is the operative complaint in this case, on June 29, 2020. (ECF No. 8.) The Court screened the FAC and allowed Ware's conditions of confinement claim to proceed against Defendants Smith and Peterson.[2] (ECF No. 9.)

Ware's FAC alleges the following: On December 4, 2018, Ware was being transported from Carson-Tahoe Hospital to NNCC. (ECF Nos. 8, 9.) Correctional Officers Smith and Peterson placed Ware in the back of a transport van while Ware was in full restraints, including handcuffs and leg shackles. (*Id.*) Smith and Peterson failed to put a seatbelt on Ware (*Id.*) Peterson was driving aggressively, and Smith failed to admonish Peterson for his driving. (ECF No. 8.)[3] Peterson then made a reckless and malicious turn that caused Ware to slam into the side of the transport van. (*Id.*) Ware's head, shoulder, and arm made hard contact with the van, which resulted in Ware suffering a mild concussion, severe neck and back pains, and extreme and continuous headaches.[4] (*Id.*)

At the case management conference on May 28, 2021, the Court bifurcated discovery to first focus on the issue regarding exhaustion of Ware's administrative remedies. (ECF No. 28.) Discovery on the issue of exhaustion closed on June 28, 2021. (*Id.*)

///

---

[2] On June 22, 2021, Peterson was dismissed from this action without prejudice for a failure to effectuate service pursuant to Fed. R. Civ. P. 4(m). (ECF No. 29.)

[3] The screening order, (ECF No. 9), states that Smith, not Peterson, was driving the van. Ware's FAC, (ECF No. 8), states that Peterson, not Smith, was driving the van.

[4] Pursuant to 28 U.S.C. 1915A(a), the Court screened Ware's FAC and dismissed, with prejudice, Ware's deliberate indifference to a serious medical need claim. (ECF No. 9.) For this reason, the recitation of the facts is limited to Ware's Eight Amendment conditions of confinement claim.

Thereafter, Smith filed the instant motion for summary judgment arguing Ware failed to exhaust his administrative remedies. (ECF No. 30.) Smith argues he is entitled to summary judgment because Ware "did not file a first or second level grievance. Therefore, [Ware] failed to fully exhaust the administrative grievance process prior to filing his Complaint. . . ." (*Id.* at 6-7.)

Ware responded on October 14, 2021, by filing a cross-motion for summary judgment. (ECF No. 36.) Ware asserts "that the reason the remedies were not exhausted is because the AWP Lisa Walsh replied saying if [Ware] continues to p[u]rsue this issue, [he] will receive a notice of charges if he continues to write another grievance about this current situation." (*Id.* at 2-3.) Ware also asserts that he "was in segregation and could not get grievances in the mail due to being locked in a cell 24 hours a day. [Ware] was dependent on C/O's to pick up mail and/or grievances but could not control the C/O's actions." (*Id.*) Ware also provides a grievance response from AWP Lisa Walsh. (*Id.* at 5.)

On November 4, 2021, Smith replied to Ware's cross motion for summary judgment. (ECF No. 37.) Smith alleges that Ware "fails [to] put forth sufficient evidence to raise a genuine issue of material fact capable of defeating [Smith's motion for summary judgment]." (*Id.* at 4-5.) Smith also asserts that Ware "was not prevented from grieving the alleged treatment." (*Id.* at 5.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at

248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary

materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

*of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.  DISCUSSION

####   A.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence

viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

**B.    NDOC's Inmate Grievance System**

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF Nos. 30-3, 30-6.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (ECF No. 30-3 at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 12.)  NDOC staff is required to respond within forty-five days. (*Id.*) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a justification to continue to the first level." (*Id.* at 13.) "A First Level grievance should be reviewed, investigated and responded to by the Warden at the institution where the incident being grieved occurred." (*Id.* at 12.)  "The Warden may utilize any staff in the development of a grievance

7

response." (*Id.*) The time limit for a response to the inmate . . . is forty-five" days. (*Id.* at 14.) Within five days of receiving a dissatisfactory First Level response, the inmate may appeal to the Second Level, which is subject to still-higher review. (*Id.*) Officials are to respond to a Second Level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.* at 15.) Once an inmate receives a response to the Second Level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

### C. Analysis

Smith argues Ware did not properly exhaust his available administrative remedies with respect to the single claim alleged in this matter. (ECF Nos. 30, 37.) Specifically, although Ware filed two informal grievances related to the issues in this case, Smith contends Ware failed to appeal the responses of either of the informal grievances to the first or second administrative levels as required by AR 740. (ECF Nos. 30, 37.)

A review of the authenticated evidence submitted by Smith does establish Ware filed two informal grievances regarding the claim asserted in the FAC. (*See* ECF Nos. 30-1 at 17-19, 30-4, 30-5.) First, Ware filed an Informal Grievance Number 2006-30-75593. (ECF Nos. 30-1 at 19, 30-4.). The hard copy of this informal grievance provided by Smith is unintelligible. However, Smith also submitted a copy of the "Improper Grievance Memorandum," provided to Ware in response to this grievance as well as a summary of Ware's grievance history from NDOC's internal grievance tracking system. (ECF Nos. 30-1, 30-4.)

According to NDOC's grievance system, Grievance Number 2006-30-75593 was returned to Ware on December 21, 2018 because the grievance did not list a requested remedy. (ECF No. 30-1 at 19.) The hard copy documents submitted with respect to this grievance do not indicate whether this grievance was "denied" on this basis or whether the grievance was explicitly "rejected." However, a later entry related to this grievance by NDOC states that Ware was provided a "rejection notice (DOC 3098)", establishing that the information grievance was rejected—not simply denied. (*Id.*)

According to AR 740.03(5), if a grievance is "not accepted . . . the inmate may not appeal that decision at the next level." (ECF No. 30-3 at 5.) Therefore, an inmate in this situation is prohibited from filing a first and/or second level grievance. Rather, the inmate's only option would be to correct the deficiencies of the initial grievance and re-submit the grievance at the same level. (*See* ECF No. 30-4, DOC 3098 form provided to later issues with this grievance.) It appears this is exactly what Ware attempted to do.

According to NDOC's records, Ware attempted to re-file this grievance at the informal level on January 11, 2019. (*See* ECF No. 30-1 at 19 (listing level of next transaction as "IF").) This time NDOC issued a second "Improper Grievance Memorandum" claiming that Ware did not "appeal" the prior of "rejection" of his grievance within the 5-day time frame for *appealing* a response to the original grievance and thus his claim was deemed "abandoned." (*Id.*; ECF No. 30-4 at 2.)

Based on NDOC's own regulations, however, Ware was not *permitted* to file an appeal in this instance because his grievance was initially *rejected*—not denied. (ECF No. 30-3 at 5; ECF No. 30-1 at 19.) Therefore, the 5-day time limit for filing an appeal did not apply, and in fact, Ware was explicitly prohibited from filing an appeal in this circumstance. Moreover, there does not appear to be any timeframe listed in AR 740 for resubmitting a previously rejected grievance—aside from the normal six-month time frame required to submit an informal grievance in AR 740.08(4). (*See* ECF No. 30-3 at 11.)

Ware resubmitted his informal grievance on January 11, 2019—within 6 months of the events alleged in this case as required by AR 740.08(4). Therefore, it appears NDOC employees failed to properly follow AR 740 when they refused to process Ware's re-submitted informal grievance (which was not an appeal) and *was* timely. Based on all of this, Ware could not take any additional actions to exhaust this grievance—especially after NDOC stated his claim was "abandoned."

The PLRA requires exhaustion only of those administrative remedies "as are available,"—it does not require exhaustion when circumstances render administrative

9

remedies "effectively unavailable." *See Sapp v. Kimbrell*, 623 F.3d 821, 823 (9th Cir. 2010); *Nunez v. Duncan*, 591 F.3d 1217 1224–26 (9th Cir. 2010) (holding that Nunez's failure to timely exhaust his administrative remedies was excused because he took reasonable and appropriate steps to exhaust his Fourth Amendment claim and was precluded from exhausting, not through his own fault but by the Warden's mistake). "[F]ailure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez,* 807 F.3d 982, 986 (9th Cir. 2015). Based on the above and NDOC's actions in processing Grievance Number 2006-30-975993, it appears there were no further administrative remedies available to Ware to exhaust this claim and summary judgment should be denied on this basis alone.

However, even assuming Ware was required to file a *new* informal grievance after Grievance Number 2006-30-75593 was rejected, Ware also attempted to do just that. Specifically, on December 21, 2019, after his first informal grievance was "rejected," Ware filed a new informal grievance, Grievance Number 2006-30-76244, raising the same issues. (*See* ECF No. 30-5.) Although the hard copy of this informal grievance is also unintelligible, (*see id.* at 3), the documents submitted by Smith from NDOC's internal tracking system appears to show that this grievance was also rejected because "grievances that have the same issue in a previously filed grievance will not be accepted." (ECF No. 30-1 at 17.) Therefore, even if Ware was required to file an entirely new informal grievance after his first grievance was *rejected*, Ware's attempt to do this were also prohibited by NDOC and there does not appear there were any further administrative remedies available to him with respect to Grievance Number 2006-30-76244 either.

Based on the record before the Court at this time, the Court finds Smith failed to meet his initial burden on summary judgment to establish that Ware did not exhaust his administrative remedies. Therefore, the burden does not shift to Ware to come forward with evidence to defeat summary judgment. Accordingly, Smith's motion for summary judgment should be denied.

With respect to Ware's cross-motion for summary judgment, Smith is correct that

Ware did not submit authenticated evidence to support his own motion for summary judgment. Moreover, as noted above, some of the evidence submitted by Smith was unintelligible at this time. Therefore, the Court cannot state, as a matter of law, that no issues of fact remain with respect to the issue of exhaustion. Therefore, the Court also finds that Ware has likewise failed to meet his initial burden on summary judgment and his cross-motion should likewise be denied.

**IV.   CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Smith's motion for summary judgment, (ECF No. 30), be denied, and that Ware's motion for summary judgment, (ECF No. 36), be denied.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.   RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Smith's motion for summary judgment, (ECF No. 30), be **DENIED**, and Ware's motion for summary judgment, (ECF No. 36), be **DENIED**.

**DATED**: December 14, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**